### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

**KENNETH F. PHILLIPS**

**Derivatively on behalf of VBENX CORPORATION**

**and derivatively on behalf of CFN AGENCY, INC.**

**a wholly owned subsidiary of YouDecide.com, Inc.**

                          **Plaintiff,**

    **vs.**

**WALTER SMITH, PETER MARCIA,**

                         **Individual Defendants**

**VBENX CORPORATION, YOUDECIDE.COM, INC.**

**CFN AGENCY, INC.**

                   **Nominal Defendants**

**Case No:**

**VERIFIED SHAREHOLDER**

**DERIVATIVE COMPLAINT**

**Jury Trial Demanded**

# Contents

I. NATURE AND SUMMARY OF THE ACTION ........................................................................ 3

II. JURISDICTION AND VENUE ............................................................................................... 6

III. PARTIES ............................................................................................................................... 7

IV. OVERVIEW-THE CFN LAWSUIT AND ITS ADJUDICATION ........................................ 8

IV. SUBSTANTIVE ALLEGATIONS ...................................................................................... 11

    A. CFN Is Sold To Its Current Owners ................................................................................ 11

    B. The Parties Re-Negotiate The Terms Of Their Relationship ............................................. 11

    C.  Parties Execute The 2007 Agreement ............................................................................. 12

    D. The Parties Use of The Term "Representative of Record" ................................................. 13

    E. Liberty's Systems and Commission Payments ................................................................. 14

    F. Amendments to the Exhibit Are Approved by CFN .......................................................... 15

    G. CFN's (Non) Relationships With Its Alleged Clients And Its Efforts Not To Tell Liberty
    The Truth and implement the "IGNORE" Strategy ................................................................ 16

    H. The Canary in the Coal mine .......................................................................................... 18

    I. The Truth emerges: CFN'S Relationship With Home Depot .............................................. 19

    J. CFN had a conscious pattern of deceiving Liberty ........................................................... 21

V. DERIVATIVE ALLEGATIONS ........................................................................................... 21

VI. DUTIES OF THE INDIVIDUAL DEFENDANTS .............................................................. 22

    a.    Fiduciary Duties ...................................................................................................... 22

    b.    Breaches of Duties .................................................................................................. 23

VII. AIDING AND ABETTING, AND CONCERTED ACTION ............................................... 26

VIII. DEMAND FUTILE AND EXCUSED ............................................................................... 28

IX. CAUSES OF ACTION ........................................................................................................ 31

    COUNT I.  Against All Defendants for Breach of Fiduciary Duties ......................................... 31

    COUNT II. Against All Defendants for Breach of the Implied Covenant of Good Faith and Fair
    Dealing .............................................................................................................................. 33

    COUNT III. Against All Defendants for Unjust Enrichment .................................................... 34

    COUNT IV. Against All Defendants aiding and abetting and concerted action ....................... 35

    COUNT V.  Against Walter Smith for Aiding and Abetting Marcia's Fiduciary Breach ........ 36

X. PRAYER FOR RELIEF ........................................................................................................ 37

XI. JURY TRIAL DEMANDED ............................................................................................... 38

VERIFICATION .................................................................................................................... 39

KBP CFN 09072017

Plaintiff  Kenneth F. Phillips, by his undersigned attorney, submits this Verified Shareholder Double Derivative Complaint in the name of and on behalf of nominal defendants Vbenx Corporation, YouDecide.com, Inc. and CFN Agency, Inc. against the 2 (two) and directors and 2 (two) officers of all the Nominal Defendants  named herein.  Vbenx Corporation is the parent of YouDecide.com, Inc.  and CFN Agency, Inc is a wholly owned subsidiary of YouDecide.com, Inc.

Plaintiff bases his allegations on personal knowledge as to his own acts, and on information and belief as to all other allegations, based on investigation by counsel, including: (a) review and analysis of recently concluded lawsuit between CFN and Liberty in the United States District Court, District of Massachusetts, Civil Action No.: 12-12091- MGM ("CFN LAWSUIT") and (b) review and analysis of other publicly available information concerning CFN.

## I. NATURE AND SUMMARY OF THE ACTION

1. This is a double derivative action brought on behalf of shareholders of Vbenx Corporation ("Vbenx") and its wholly-owned subsidiary YOUDECIDE.COM, Inc and .CFN Agency, Inc.  ("CFN" ) collectively the "Nominal Defendants"  or the "Company" against 2 (two) officers and two (2) directors for breaches of Defendants' fiduciary duties of loyalty, due care, good faith, fair dealing, independence, candor, as well as their unjust enrichment, aiding and abetting and concerted action in the breach.

2. Plaintiff brings this action to address the significant intentional and deliberate wrongdoing of Peter Marcia ("Marcia") a Director of both Vbenx and CFN since 2004 and CEO of Vbenx and President of CFN in Massachusetts and Walter Smith ("Smith") a Director of both Vbenx and CFN since March 31, 2009 and general counsel of Vbenx and Treasurer of CFN in Massachusetts.

3. Marcia and Smith have breached their fiduciary duty to CFN in connection with a breach of a contract and a breach of the covenant of good faith and fair dealing implicit in an Affinity Marketing Agreement, ("the 2007 Agreement") between CFN and Liberty

3

Mutual Insurance Company ("Liberty").  **EXHIBIT A.**

**2007 AGREEMENT**

4. The 2007 Agreement regulates CFN's entitlement to compensation for providing certain services marketing Liberty Mutual insurance products to constituents of employers or associations described as "Groups" in the contract.

5. Specifically the breach concerned CFN's continued acceptance of commission payments from Liberty to which CFN was not entitled and further to which CFN knew they were not entitled.[1] These unearned payments covering the period 2007 thru 2011 are estimated by Liberty Mutual to be approximately $2.1 Million.

6. For many years, Liberty paid commissions to CFN for insurance products sold to members of many Purported CFN Groups, believing that those members came to Liberty through CFN's efforts.  In fact,

---

[1] "The Court has no trouble concluding that acceptance of such commissions under the circumstances amounted to a breach of the 2007 Agreement in at least one of two ways:  first, it breached the plain terms of the compensation provision of the agreement, which conditioned payment on certain circumstances (and, as a logical extension, plainly meant that no payment was to be accepted if CFN was aware those conditions were not met); and second, CFN's knowing and repeated acceptance of payments to which it was not entitled under the plain terms of the 2007 Agreement certainly breached the covenant of good faith and fair dealing implicit in that agreement.  Thus, Liberty's motion for summary judgment as to its breach of contract counterclaims is ALLOWED insofar as these twenty-seven groups are concerned."
ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 112 & 121) Leo T. Sorokin, United States District Judge October 23, 2015 Document 137.

KBP CFN 09072017

unbeknownst to Liberty, CFN had nothing to do with these sales, because CFN had nothing to do with those Purported CFN Groups.

1. In 2012, CFN filed a lawsuit, ("CFN LAWSUIT"), **EXHIBIT B. CFN COMPLAINT** against Liberty alleging that Liberty acted wrongfully when Liberty stopped making certain of these payments. Liberty counterclaimed against CFN, alleging that CFN acted wrongfully by continuing to accept certain of these payments that Liberty had previously made. The core issue was whether CFN was entitled to receive these commissions for their Groups under the 2007 Agreement. Liberty was granted Summary Judgment on 27 Groups ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 112 & 121) Leo T. Sorokin, United States District Judge October 23, 2015 Document 137.  ("SJ  ORDER SOROKIN") **EXHIBIT C.  SJ ORDER SOROKIN.**

7. The CFN breach was  briefed and prepared for trial in the United States District Court, District of Massachusetts, Civil Action No.: 12-12091- MGM.   The action was settled before trial and a STIPULATION OF DISMISSAL was filed.

8. Plaintiff, on behalf of Vbenx and its shareholders will seek full restitution for any money and financial damages based on the loss of

5

Liberty revenue and any current and future potential financial loss of Liberty as a trading partner.

## II. JURISDICTION AND VENUE

9.   This Court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(l) and the fact that the amount in controversy exceeds $75,000. This action is not a collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have.

10.  This Court has personal jurisdiction over each Nominal Defendant, Vbenx and CFN because they are corporations that conduct business in and maintain operations in this District.

11.  The Court has personal jurisdiction over each of the individual Director Defendants, Walter Smith and Peter Marcia, who have extensive contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.  Venue in the District of Massachusetts is appropriate pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in the District.

## III. PARTIES

13. Plaintiff Kenneth F. Phillips, a citizen of Massachusetts, is a current shareholder of Vbenx Corporation and has been a shareholder at relevant times to the claims asserted herein. He is also a Founder of Vbenx and served on the Board until approximately March 31, 2009.

14. Nominal Defendant Vbenx Corporation is a corporation organized under the laws of the State of Delaware with a principal place of business at 4450 River Green Pkwy, Ste. 100A Duluth, Georgia. 30096.

15. Nominal Defendant CFN Agency, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 4450 River Green Pkwy, Ste. 100A Duluth, Georgia. 30096.  CFN is an insurance Agency, registered in Massachusetts #000870328, operated in conjunction with a proprietary web-based portal known as YouDecide.  CFN Agency, Inc. is a wholly owned subsidiary of Vbenx Corporation.

16. Director Defendant Walter Smith ("Smith") has been a Director of both Vbenx and CFN since March 31, 2009; in addition he is the general counsel of Vbenx and the treasurer of CFN in Massachusetts. Smith is an attorney, licensed to practice law in Virginia since 1984.

7

He is on information and belief, EVP and chief counsel at
AssuredPartners, Inc., insurance brokerage firm. He resides at 12319
Countryview Dr. Glen Allen, VA 23059 and is a citizen of Virginia.

17. Defendant Peter Marcia (Marcia) has been a Director of both Vbenx
and CFN since 2004; in addition he is the CEO of Vbenx and the
President of CFN in Massachusetts.  He resides at 210 So. Wilton Rd.
Richmond, VA 23226 and is a citizen of Virginia.


## IV. OVERVIEW-THE CFN LAWSUIT AND ITS ADJUDICATION

18. CFN is an affinity marketing company, that helps large companies
and "affinity" groups such as trade associations and alumni groups
which CFN and Liberty refer to as "Groups", provide voluntary
benefits, including discounted homeowners and automobile insurance
policies, to employees and members (called "Members").

19. Liberty is a Fortune 100 insurance company and is the #1 employer-
sponsored auto and home voluntary benefits program in the industry
with over 14,000 partners. Liberty offers, among other things,
homeowners and automobile insurance policies to companies and
individuals through a variety of sales channels, including through
affinity marketing companies such as CFN.

KBP CFN 09072017

20. CFN and Liberty are parties to a contract whereby CFN was to offer Liberty's policies to the Members in exchange for certain commission payments when Liberty's policies were sold to or renewed by one of the Group's members. The parties signed an Affinity Marketing Agreement, ("the 2007 Agreement") EXHIBIT A which replaced the parties' 1997 and 2002 contracts and redefined the relationship between CFN and Liberty as of January 1, 2007

21. In late 2011, a dispute arose between the parties concerning CFN's continued entitlement to these commissions.

22. In 2012, CFN filed a lawsuit, ("CFN LAWSUIT"), against Liberty alleging that Liberty acted wrongfully when Liberty stopped making certain of these payments.  Liberty counterclaimed against CFN, alleging that CFN acted wrongfully by continuing to accept certain of these payments that Liberty had previously made. The core issue was whether CFN was entitled to receive these commissions for their Groups under the 2007 Agreement.

23. The Court granted Liberty summary judgment on thirty-two (32) of the eighty-seven (85) Groups at issue, which represents, together with prejudgment interest, approximately $315,777.36  in commissions to

KBP CFN 09072017

which Liberty is entitled and that were wrongfully accepted by CFN. The remaining Groups were remaining for trial.

24. Liberty stated in a Motion to Support Prejudgment Attachment "*the evidence and this Court's summary judgment rulings establish that Liberty believes is reasonably likely to obtain judgment at trial in the additional amount of $1.8 million, before accounting for a potential multiplier under Chapter 93A or attorneys' fees. Based on the commissions Liberty paid to CFN during the relevant time period, Liberty can reasonably expect to obtain a total judgment equal to or in excess of $2.1 million.*"

**25.** Prior to trial, the case settled and the outcome is contained in a Settlement Agreement marked "Confidential." ("Settlement")

**STIPULATION OF DISMISSAL** *Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Plaintiff CFN Agency, Inc. ("CFN") and Defendant Liberty Mutual Insurance Company ("Liberty") hereby stipulate that this action, including all claims and counterclaims, shall be dismissed with prejudice, without costs and with all rights of appeal waived.*

26. In addition to the amounts granted in Summary Judgment, Plaintiff believes that after Discovery and the analysis of the damages created by this settlement there will be additional damages that are due the

10

Shareholders of CFN and Vbenx due to the breach of the 2007

Agreement and its various remedies. Derivative Shareholders will

move this court to cause Defendants to reimburse CFN for any money

or financial damages so determined.

## IV. SUBSTANTIVE ALLEGATIONS

### A. CFN Is Sold To Its Current Owners

27. CFN's voluntary benefits business began sometime in the late 1990s.

During that time CFN had various relationships with many insures

and other service providers.  In 2004, insurance giant ACE USA sold

CFN to the current owners. At the time of that transaction, Liberty

was CFN's main source of revenues, paying at least twice the amount

of commissions paid by the second largest commission payor.

### B. The Parties Re-Negotiate The Terms Of Their Relationship

28.  In 2006, new ownership, under the direction of Mr. Sal Percia,

President undertook the task of re-negotiating the terms of their

relationship.  Liberty wanted the contract to reflect that CFN was a

broker for the designated Groups.  In the course of negotiations,

Liberty requested that CFN provide proof of its relationship with the

11

various Groups, but CFN complained that it would be too burdensome to do so.

29. Ron Fulginiti Assistant Secretary of CFN Massachusetts, then "asked my underwriting department to give me the name of any client that is associated with the [CFN] relationship, and I made those accounts Exhibit A" (to the Original 2007 Agreement).  CFN then proposed a list of its purported Groups, and it "guaranteed" that it "has been designated representative of record" by each of them. (Ex. 1, 2007 Agreement at Ex. A.)  Liberty accepted CFN's "guarantee" without insisting on verification.

30. Exhibit A is titled "List of Groups" and contains the following preamble:

   a.  To date, ***CFN expressly guarantees that it has been designated as representative of record for the Groups listed in this addendum*** . . . . This list of Groups will be expanded from time to time by mutual agreement of the parties." (Emphasis added).

## C.  Parties Execute The 2007 Agreement

31. The resulting Affinity Marketing Agreement (the "2007 Agreement"), was effective as of January 1, 2007. It expressly terminated all prior

agreements, and eliminated altogether CFN's authority to act as Liberty's agent. It required CFN to use its "voluntary internet property [called YouDecide.com] . . . to support the marketing efforts of a multi-carrier mass marketing insurance program in which Liberty is a carrier," and to "work closely with the Groups" "to introduce Liberty products to members of the Groups."

32. Section 6 of the 2007 Agreement provides that Liberty would pay commissions to CFN for any particular Group only for so long as CFN enjoyed "continued designation as a representative of record for Group" and only for the "duration of Liberty's participation in YouDecide.com with respect to a specific Group."

33. Similarly, Section 5(a) (vi) of the 2007 Agreement stated that Liberty could remove a Purported CFN Group from the Agreement upon CFN's "loss of broker of record designation."

**D. The Parties Use of The Term "Representative of Record"**

34. The 2007 Agreement uses the phrase "representative of record" to characterize the relationship CFN is required to have with each Group in order to obligate Liberty to pay it commissions.

35. The phrase "representative of record," for all practical purposes, has the same meaning as the more commonly used term "broker of record." CFN's former CEO, Sal Percia, who signed the 2007 Agreement on behalf of CFN, testified that the two phrases are "synonymous."  Chris Capone, who signed on behalf of Liberty, similarly testified that he has seen the term "representative of record" used hundreds of times and understands it to be "interchangeable" with the term "broker of record. Whether it is called broker of record or representative of record, the designation serves two functions. First, it gives CFN permission to act on behalf of the Group, and second  it entitles CFN to commissions.

**E. Liberty's Systems and Commission Payments**

36. When a prospective customer visited or called a Liberty agent or call center, the agent was trained to ask the prospect a number of questions that might entitle the prospect to a discount (for example, where do you work, where did you go to college, are you in a professional trade association, etc.?). If the prospect answered that he or she belonged to a Group designated as a CFN Group, the agent was trained to include a "merchant code" in the application. Once the application was

14

approved and the customer paid the premium, Liberty's system recognized that code and generated a commission payment to CFN. **Importantly, this practice meant that a commission was generated regardless of whether the prospect had ever participated in the You Decide platform**.

### F. Amendments to the Exhibit Are Approved by CFN

37. After the 2007 Agreement was signed, Liberty learned from time to time – from sources other than CFN – that CFN did not actually have an on-going relationship with some Groups. When this happened, Liberty and CFN entered into various Amendments, which removed such Groups from the list.

38. One such amendment was proposed in June, 2009. Liberty sent it to CFN with an email, explaining that the amendment "[r]emove[d] GTE (part of Verizon where ABC is BOR), IBM (lost BOR to Beneplace), SHRM and Alaska Airlines . . . **contract cites comp[ensation] contingent on BOR . . .** There was no new broker for SHRM or Alaska Airlines; those clients told Liberty that they did not deal with CFN.

15

39. CFN's Vice President and General Counsel approved the amendment. He wrote: "The amendment is pretty vanilla – if the commission rates are right and the client listings are right – it is OK." It was signed on June 23, 2009.

40. The same occurred in 2011 when Liberty proposed and CFN agreed to, an amended list, in part, to address the "loss of BOR"

## G. CFN's (Non) Relationships With Its Alleged Clients And Its Efforts Not To Tell Liberty The Truth and implement the "IGNORE" Strategy

41. After the 2007 Agreement was signed, on information and belief CFN focused its energies on obtaining business from what it called its "Version 2" clients. These were CFN's active and legitimate clients and for the most part, the relationships were formed after the current management group bought CFN in 2004. Liberty has never stopped paying commissions for Version 2 Groups.

42. CFN refers to the remainder of its Groups as "legacy" or "Version 1" Groups ("Legacy Groups"). Generally speaking, CFN's relationship with these entities predated the 2004 acquisition.

43. On information and belief the current management group had no contacts at many of these Legacy Groups and it had very little success in trying to develop relationships with them.

44. On information and belief, in the CFN lawsuit, CFN has not identified any communications with 62 Legacy Groups.

45. On many occasions, Liberty asked CFN to provide information about relationships with its Groups. This occurred (at least) on the following occasions:

   a. November 6, 2006 ( 11/6/06 Email from Marcia to Capone);

   b. December 5, 2006 (12/5/06 Email Exchange re Meeting at Vbenx);

   c. April 25, 2008 (4/25/08 Email Exchange re MA Discounts at Vbenx)

   d. April 8, 2009 (4/15/09 Email Exchange re Most Recent 2 Amendments at Vbenx.);

   e. March 1, 2011 (3/3/11 Email Exchange re MA Discounts at Vbenx); and

   f. October 20, 2011 Letter to CFN from Liberty AVP Mark Parabicoli. **EXHIBIT D. Liberty Letter**

46. In 2009, Liberty asked about a number of clients, including JP Morgan Chase, CFN's CEO, Peter Marcia, noted to his colleagues at CFN that Liberty was paying "$11k" per month for JP Morgan, so "this note concerns me."

KBP CFN 09072017

47. In 2010, a CFN executive noted that Liberty was "sniffing around" an account for years (Home Depot) and worried about how long CFN can "dodge that bullet" associated with "non-clients."

48. In March 2011, CFN responded to one of Liberty's requests by "pulling revenue figures for these clients" and otherwise ignoring Liberty's inquiries.

49. Mr. Marcia was fully aware of the issue and he weighed in: "I completely agree with the ignore strategy."

## H. The Canary in the Coal mine

50. The lack of relationship and danger of losing Liberty commissions was known to many employees at CFN communicated to Marcia and Smith on a regular basis...so both were aware of the situation.

51. CFN employee Ron Fulginiti noted to both Smith and Marcia in July of 2009 "due to the fact we do not have relationships with our biggest revenue clients with Liberty Mutual it may start a quick dissolving of the book of business with Liberty Mutual." **EXHIBIT F.**

52. Kyle Fabrizio Vice President, Client Relations noted "At this point 1 think we need to be a bit more proactive on the non-clients with large

Liberty revenue or we risk having the rug pulled out from under us without having planned/budgeted for it." **EXHIBIT F.**

53. Employee Stephanie Cowie repeated the Marcia "IGNORE STRATEGY" emailing Smith and Marcia  concerning Chase "At that time the strategy was to let the client know that they still have employees coming to the site — to show value —- to that she (Chase Director) basically said, "well l'm surprised at that because we aren't offering YD anymore. Please send me some activity reports". **Of course at that point the plan was to not send reports and do nothing in hopes to not disrupt the Liberty revenue.** Then in late 2008, JP Morgan Chase actually asked us to take their logo off the(y) YD site and not communicate to employees" **EXHIBIT F.**

## I. The Truth emerges: CFN'S Relationship With Home Depot

54. Between 2007 and 2011, Liberty paid $241,681 in commissions for business written to employees of the Home Depot is one of the Groups for which CFN seeks commissions under the 2007 Agreement. Internal CFN correspondence reveals that Home Depot

"wanted to terminate the [CFN] relationship in 2001, but never sent a termination letter.

55. CFN did not tell Liberty that Home Depot wanted to terminate the relationship with CFN then or at any time later.  To the contrary, due to "the significant current Liberty revenue," CFN decided to just leave this case alone. For years after Home Depot told CFN that it intended to terminate the relationship, CFN led Liberty to believe that it had an active relationship with Home Depot. During this time, Liberty affirmatively asked CFN to provide information about the Home Depot relationship.

56. CFN ignored Liberty's requests. In a 3/3/2011 email Peter Marcia, CFN's Chief Executive Officer called this the "ignore strategy."

57. Another CFN employee in a Jan 7, 2010 email exchange referred to Home Depot as a "non-client."

58. In response to a deposition subpoena in the CFN Liberty Lawsuit, Home Depot produced a 2004 contract that it entered into with Metropolitan Life. That contract provides that Home Depot would only offer to its employees home and auto insurance from a company other than Liberty (Metropolitan).

59. A Home Depot representative, Brant Suddath, testified that he looked for a contract between Home Depot and CFN but could not find it. He also asked his colleagues at Home Depot about CFN. None of them knew who You Decide was or what it did.

## J. CFN had a conscious pattern of deceiving Liberty

60. CFN's Efforts to deceive Liberty are not limited to Home Depot. A few examples are outlined for:  J.P. Morgan Chase, Lenovo, DaimlerChrysler, DuPont, Cox Communications, ACE USA Inc., Erickson and H.J. Heinz...  **EXHBIT E. LIST OF PURPORTED CFN GROUPS**

## V. DERIVATIVE ALLEGATIONS

61. Plaintiff brings this action derivatively to redress injuries suffered by the Company as a direct result of the breaches of fiduciary duties by the Individual Defendants.

62. Plaintiff has owned Vbenx stock during the wrongful course of conduct by CFN, Vbenx and the Individual Defendants alleged herein, and continues to hold Vbenx stock.

KBP CFN 09072017

63. Plaintiff will adequately and fairly represent the interests of the
Company and its shareholders in enforcing and prosecuting its rights
and has retained counsel competent and with experience in
shareholder derivative litigation.

## VI. DUTIES OF THE INDIVIDUAL DEFENDANTS

### a.  Fiduciary Duties

64. By reason of their positions as officers and directors of the Company,
each of the Individual Defendants owed and owe CFN and its
shareholders fiduciary obligations of trust, loyalty, good faith, and due
care, and were and are required to use their utmost ability to control
and manage CFN in a fair, just, honest, and equitable manner. The
Individual Defendants were and are required to act in furtherance of
the best interests of CFN and not in furtherance of their personal
interest or benefit.

65. To discharge their duties, the officers and directors of CFN were
required to exercise reasonable and prudent supervision over the
management, policies, practices, and controls of the financial and
contractual affairs of the Company. By virtue of such duties, the

officers and directors of CFN were required to avoid engaging in,
approving, or permitting self-dealing at the expense of the Company.

## b. Breaches of Duties

66. The conduct of the Individual Defendants complained of herein
involves a knowing and culpable violation of their obligations as
officers and directors of CFN, the absence of good faith and fair
dealing on their part, a conscious disregard for their duties to the
Company, specifically that the Individual Defendants were aware and
or reckless in accepting large commission payments to which they
were not entitled and which they knew they were not entitled. These
wrongdoings have and will continue to create a serious financial and
reputational injury to CFN.

67. The Individual Defendants breached their duty of loyalty and good
faith by engaging in, or allowing others to engage in, self-dealing at
the expense of the Company. CFN was on information and belief
extremely strapped for cash during the relevant timeframe 2007
through 2011.  On information and belief Marcia used portions of the
ill gotten gains to pay him a salary and provide him with other
benefits.

68. The Individual Defendants, because of their positions of control and authority as officers and directors of CFN, were able to and did, directly or indirectly, exercise control over the wrongful acts. By operation of law, Defendants breached their duties as set forth in this Complaint and  these breaches were not made in the context of the Business Judgment rule since it is undisputed  CFN  "certainly breached the covenant of good faith and fair dealing implicit in that agreement." (SJ SOROKIN p.18)

69. CFN's breach was conceived, directed and executed by the only 2 (two) officers and 2 (two) directors at CFN, Defendants Marcia (at all relevant times) and Smith (since March 31, 2009 when he became a Director). They are also the only 2 Directors of Vbenx, the CFN parent.

70. Further this Derivative lawsuit will firmly establish that Marcia and Smith both took independent and collective actions to mislead Liberty as to the validity of their Representative of Record ("ROR") for the Groups for which they were receiving commissions.

71. The effort to deceive, ignore multiple requests and withhold information was not just limited to the period of the requests before the CFN lawsuit, but the obstruction occurred in discovery as well;

24

where Liberty had to compel CFN compliance.  Smith testified that he

would not comply and later when compelled, District Judge Leo T.

Sorokin: ELECTRONIC ORDER entered; The Motion to Compel

Compliance (#101) is DENIED in light of CFN's stipulation that it

will not offer or rely upon any communication not produced in

discovery.  This CFN stipulation almost guarantees a loss of

commissions to CFN on many of the cases remaining for trial.  This

action further damages CFN in an amount to be determined at trial.

72. CFN's Breach deprived Liberty of the fruits of its bargain by

accepting commissions to which it was not entitled; estimated by

Liberty to be equal to or in excess of $2.1 million.  Liberty is entitled

to restitution and the Shareholders of Vbenx and CFN are entitled to

recover any amounts received by Liberty as restitution from

Defendants Marcia and Smith.

73. In addition to the above restitution Liberty is the #1 employer-

sponsored auto and home voluntary benefits program supplier, any

alienation or loss of capacity to distribute Liberty products would be

very damaging to CFN's competitive position as an affiliate provider.

CFN has damaged the CFN franchise and Defendants will be

responsible to the shareholders for any amounts of any current or

future damage in distribution capacity in addition to the amounts recovered by Liberty.

## VII. AIDING AND ABETTING, AND CONCERTED ACTION

74. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

75. During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did:

  i.   (i)deceive Liberty in order to require Liberty to continue the payment of commissions; and

  ii.  (ii) provide much needed cash Individual Defendants enjoyed as a result of holding these positions; to include

salary and other payments that on information and belief were provided to Marcia and possibly Smith.

76. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual breaches of fiduciary duty, waste of corporate assets and unjust enrichment.

77. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by acquiescing to and consenting to transactions that were beneficial to defendants Smith and Marcia but detrimental to **CFN**.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

78. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the

27

accomplishment of that wrongdoing, and was aware of overall

contribution to and furtherance of the wrongdoing.

## VIII. DEMAND FUTILE AND EXCUSED

79. Demand upon the Board of Directors of **Vbenx** who also control the

subsidiaries including CFN, that they institute this action in the

Company's name would be entirely futile, and is therefore excused.

80. The Board of Vbenx consists of only two (2) individuals, Defendants

Smith and Marcia.  Both of these individuals are not disinterested and

independent with respect to the acts and omissions alleged herein

having consistently claimed since at least June of 2009 that their acts

and omissions were proper and lawful while they were acting as both

Officers and Directors of Vbenx.

81. The Board of CFN consists of only two (2) individuals, Defendants

Smith and Marcia.  Both of these individuals are not disinterested and

independent with respect to the acts and omissions alleged herein

having consistently claimed since at least June of 2009 that their acts

and omissions were proper and lawful while they were acting as both

Officers and Directors of CFN

82. The **Vbenx** Board is still dominated and controlled by wrongdoers who went to great expense and time (CFN Litigation) to unsuccessfully obscure their own misconduct, and it is doubtful they will not now take action to protect the interests of **Vbenx** or its shareholders.

83. Moreover, Director Defendants Smith and Marcia face a substantial likelihood of personal liability for their breaches of the fiduciary duties of loyalty, due care, good faith, fair dealing, independence, candor, as well as their unjust enrichment, aiding and abetting and concerted action. .

84. Through Director Defendant's inaction, acquiescence, and/or affirmative endorsement of the wrongdoing complained of herein, the Director Defendants evinced an attitude throughout the Relevant Period to the effect that, requests for cooperation with Liberty to determine eligibility to receive commissions were t ignored.  In a 3/3/2011 email Peter Marcia, CFN's Chief Executive Officer called this the "ignore strategy."

85. CFN was found to be responsible for the breach of the contract with Liberty as to the payment of certain commissions; as well as breaching the covenant of good faith and fair dealing. The Vbenx

directors would be faced with a seismic change in position to pursue a Derivative lawsuit and therefore cannot effectively prosecute this Derivative lawsuit. [2]

86. Further, the Director Defendants, Smith and Marcia, have demonstrated their unwillingness to accept the Judgment of Leo T. Sorokin United States District Judge. After Liberty was successful in their Summary Judgment CFN sought reconsideration of the Court's October 23, 2015 Order ("the Order") allowing in part Liberty's motion for summary judgment. See Doc. No. 137. For the following reasons, (as contained in Document 141) Exhibit B. CFN's motion is DENIED

---

[2] *"The Court has no trouble concluding that acceptance of such commissions under the circumstances amounted to a breach of the 2007 Agreement in at least one of two ways: first, it breached the plain terms of the compensation provision of the agreement, which conditioned payment on certain circumstances (and, as a logical extension, plainly meant that no payment was to be accepted if CFN was aware those conditions were not met); and second, CFN's knowing and repeated acceptance of payments to which it was not entitled under the plain terms of the 2007 Agreement certainly breached the covenant of good faith and fair dealing implicit in that agreement…."* (emphasis added) (ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 112 & 121) October 23, 2015 SOROKIN, J.) ("SJ ORDER SOROKIN"). (SJ 18)

KBP CFN 09072017

# IX. CAUSES OF ACTION

## COUNT I.  Against All Defendants for Breach of Fiduciary Duties

87. **CFN** incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

88. Defendants owed and owe **CFN** fiduciary duties. By reason of their fiduciary relationships, the Officer and the Director Defendants owed and owe **CFN** the highest obligations of trust, loyalty, good faith, candor, oversight, reasonable inquiry, supervision, and due care.

89. Defendants made representations in the 2007 Agreement and the Amendments that CFN was a 'representative of record' for the Purported CFN Groups. In many cases these representations were untrue.  In fact, contrary to CFN's representations, for many of the Purported CFN Groups, CFN was not the representative of record at the time of those representations. (Exhibit C et al.)

90. The Agreement provided that commissions were only owed to CFN for Purported CFN Groups with which CFN enjoyed a "continued" designation of a representative of record(or put differently, did not experience a "loss of broker of record designation") and for Purported

KBP CFN 09072017

a.   CFN Groups to which Liberty products were made available through an activeYouDecide.com website.

91.  For many of the Purported CFN Groups for which CFN was paid commissions, Defendants and CFN were aware that CFN was not a representative of record or a broker of record at the time the commissions were paid yet they continued to accept commissions to which they were not entitled.

92.  Also, in many instances, CFN did not make Liberty products available to Purported CFN Group members through a website. Thus, the commissions were not properly owed.

93.   Liberty paid at least hundreds of thousands of dollars in commissions to CFN for such dormant Purported CFN Groups.

94.  CFN has been damaged in an amount to be determined at trial, but in no event less that the amount of commissions that were paid to CFN for Purported CFN Groups with whom CFN did not have an active relationship.

## COUNT II. Against All Defendants for Breach of the Implied Covenant of Good Faith and Fair Dealing

95. **CFN** incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96. All contracts include an implied covenant of good faith and fair dealing, which requires, among other things, that neither side will take actions which will frustrate the benefit of the bargain.

97. At its core, the Agreement expresses the parties' bargain that Liberty would pay commissions in exchange for CFN's efforts to make Liberty products available to Purported CFN Group members.  CFN did not live up to its end of the bargain.

98. In fact, it acted deceitfully to hide the fact that it did not provide to Liberty the bargained for benefits.

99. As a result, Liberty has been damaged in an amount to be determined at trial, but in no event less that the amount of commissions that were paid to CFN for Purported CFN Groups with whom CFN did not have an active relationship.

KBP CFN 09072017

## COUNT III. Against All Defendants for Unjust Enrichment

100. **CFN** incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

101. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of CFN.

102. Defendants received a measureable benefit from the commissions CFN received; they consciously accepted the benefit and the benefit was not conferred gratuitously by Liberty.

103. The CFN shareholders seek restitution from Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants and each of them from their wrongful conduct and fiduciary breaches while accepting commissions to which they were not entitled.

## **COUNT IV. Against All Defendants aiding and abetting and concerted action**

104. CFN incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein

105. Defendants owed and owe **CFN** fiduciary duties. By reason of their fiduciary relationships, the Officer and the Director Defendants owed and owe **CFN** the highest obligations of trust, loyalty, good faith, candor, oversight, reasonable inquiry, supervision, and due care.

106. During all times relevant hereto, the Defendants, collectively and individually, initiated a course of conduct that was designed to deceive Liberty in order to require Liberty to continue the payment of commissions; and provide much needed cash enjoyed as a result of holding these positions; to include salary and other payments that on information and belief were provided to Marcia and possibly Smith. Consequently Smith and Marcia have a personal stake or motive in the conspiracy, and therefore are acting on their own behalf.

## COUNT V.  Against Walter Smith for Aiding and Abetting Marcia's Fiduciary Breach

107.  **CFN** incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

108.  It is clear that Peter Marcia had a fiduciary duty of loyalty to CFN to conduct affairs with Liberty Mutual with Good Faith and Fair Dealing.

109.  Marcia knowingly participated in and breached his fiduciary's duty by accepting commissions that he was not entitled to receive.

110.  In addition given the dire financial position of the company in 2009 when Smith joined, Marcia needed the Liberty income to keep the company afloat.

111.  Smith was aware of the Company's perilous financial status and that CFN was not have Representative of Record for certain CFN clients and was following the "ignore' strategy created by Marcia in 2006.

112.  Smith was aware of Marcia's breach and knowingly participated by consistently enabling the CFN representation that CFN was the 'representative of record' for various CFN Groups.

113.  In June 2009, when reviewing an Amendment to the 2007 Agreement, Smith CFN's Vice President and General Counsel approved the amendment. He wrote: "The amendment is pretty vanilla – if the

KBP CFN 09072017

commission rates are right and the client listings are right – it is OK." It was signed on June 23, 2009.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an order declaring that the Defendants breached their fiduciary duties to the Nominal Defendant CFN;

B. For an order awarding damages, together with pre— and post-judgment interest to Nominal Defendant CFN;

D. Directing CFN  to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with the various contracts that govern its Broker of Record, Representative of Record status with any and all Insurance Company providers to protect the Company and its shareholders from a repeat of the damaging events herein.

 E. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts" fees, costs, and expenses; and

F. Such other relief as this Court deems just and proper.

# XI. JURY TRIAL DEMANDED

**Plaintiff hereby demands a trial by jury on all matters triable**

Dated: September 8, 2017

## EXHIBITS

Ex A. Affinity Marketing Agreement

Ex B. CFN v Liberty Complaint

Ex C. Liberty Mutual Order SJ

Ex D. Liberty Mutual Letter PARABICOLI

Ex E. List of Purported CFN Groups

Ex F. CFN EE COMMENTS ON ROR

Respectfully Submitted,

**/s/** Kenneth B. Phillips

Kenneth B. Phillips   BBO#633836

Dated September 8, 2017

LAW OFFICES OF KENNETH B. PHILLIPS

12 Walnut Street Suite 21

Natick, MA 01760

Tel: (508) 652-0085

Fax: (508) 519-2599

Email: ken@kbplaw.com

38

## **VERIFICATION**

I, Kenneth F. Phillips, hereby verify that I am a shareholder of Vbenx

Corporation and CFN Agency, Inc. (the "Company') and am ready, willing,

and able to pursue this shareholder derivative action in the hopes of

improving the Company and recovering damages for the Company caused

by Defendants' misconduct.

 I have reviewed the allegations in the foregoing Shareholder Derivative

Complaint, and as to those allegations of which I have personal knowledge, I

know those allegations to be true, accurate and complete. As to those

allegations of which I do not have personal knowledge, I rely on my counsel

and their investigation, and for that reason I believe them to be true. Having

received a copy of the foregoing complaint, and having reviewed it with my

counsel, I hereby authorize its filing.

Kenneth F. Phillips

**/s/** Kenneth F. Phillips


Dated September 8, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on September 9, 2017.

/s/ Kenneth B. Phillips

Kenneth B. Phillips BBO#633836

**Dated September 8, 2017.**