UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH F. PHILLIPS, derivatively on on behalf of VBENX CORPORATION and derivatively on behalf of CFN AGENCY, INC., <br><br> Plaintiff, <br><br> v, <br><br> WALTER SMITH, PETER MARCIA, <br><br> Individual Defendants, <br><br> VBENX CORP., CFN AGENCY, INC., <br><br> Nominal Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 17-11697-MGM <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' RULE 23.1
MOTION AND PLAINTIFF'S MOTION FOR SANCTIONS
(Dkt. Nos. 13, & 35)

July 2, 2018

MASTROIANNI, U.S.D.J.

## I.  INTRODUCTION

This action, which Plaintiff attempts to bring derivatively on behalf of VBenx Corporation ("VBenx" or "the Company"), is the most recent of five civil actions involving the Company, its corporate relatives, or its principles. It is Plaintiff's second attempt to sue Walter Smith and Peter Marcia ("Defendants") on behalf of VBenx. His first attempt resulted in a judgment against him that now exceeds $1,500,000. When ruling for the Defendants in that prior suit, initiated nine years ago in Massachusetts Superior Court, Judge Lauriat described the underlying struggle for control over VBenx as a "melodrama" between "warring factions" driven by "personalities and deep pockets" that devolved "a fairly straight-forward civil action . . . into an all-out war of attrition, retribution, name-calling, and over-the-top, scorched-earth litigation." *Finnegan v. Baker*, No. SUCV2009-03772BLS1, 2012 WL 6629636, at *1-2 (Mass. Super. Oct. 19, 2012).

1

Before the court is Defendants' Motion to Disqualify Plaintiff under FRCP 23.1 (Dkt. No. 13), Defendants' Motion to Dismiss (Dkt. No. 11), and Plaintiff's Motion for Sanctions (Dkt. No. 35). For the reasons below, the Motion to Disqualify is GRANTED, the Motion for Sanctions is DENIED, and the Motion to Dismiss is found MOOT.

## II. BACKGROUND[1]

VBenx Corporation ("the Company" or "VBenx"), also known as "VBenx/YouDecide", is a Delaware corporation headquartered in Georgia with additional offices in Massachusetts. CFN Agency, Inc. ("CFN"), is an insurance agency and wholly owned subsidiary of VBenx. Through the website youdecide.com, the company hosts "dedicated internet-accessible portals for businesses" through which businesses' employees can review and purchase insurance policies and related products not provided as employee benefits. Most if not all of the Company's revenue derives from commissions paid by insurers whose policies are marketed on youdecide.com. Those commissions are collected by CFN, which generally acts as the insurance agent for those acquiring coverage through youdecide.com.

VBenx was formed as a closely held corporation in 2004 by Kenneth F. Phillips ("Plaintiff"), J. Brent Finnegan, Salvatore Percia, Richard Baker, and Defendant Peter Marcia. Each individual subscribed to a 20% share in the Company for $250,000. Plaintiff initially failed to fund his subscription and his "unwillingness to contribute to, invest in, or loan funds or working capital to VBenx . . . continued unabated" from 2004 until at least October of 2012.[2]

---

[1] Unless otherwise noted, the facts recited here are undisputed and drawn from the parties' filings or prior litigation. To the extent facts are drawn or quoted from the parties' prior litigation, the court takes discretionary judicial notice under Rule 201(c)(1) of the Federal Rules of Evidence of facts found by Judge Lauriat in *Finnegan v. Baker*, No. SUCV200903772BLS1, 2012 WL 6629636, at *15 (Mass. Super. Oct. 19, 2012), aff'd, 88 Mass. App. Ct. 35, 35 N.E.3d 778 (2015), a case in which each of the instant parties appeared in similarly adverse postures.

[2] Plaintiff borrowed his seed money from Finnegan and Marcia, who sued for repayment in Suffolk County Superior Court on August 26, 2005. The case was voluntarily dismissed roughly two weeks later. *See* Case No. 0584CV03703. The court assumes Plaintiff produced the necessary funds, although the fact is not pertinent to the analysis below.

Finnegan, a driving force behind the Company's creation, served as chairman until 2010, when financial stress and shareholder disputes caused discord between the owners and operators and led to his removal and the series of lawsuits described below. Plaintiff served on the board until 2009, as did Percia. Defendant Marcia has served as a board member at all relevant times and as the Company's Chief Executive Officer since 2006. Defendant Smith joined the Company later, in January of 2009, and was promptly elected Vice President, Secretary, and Director of the Company.

The Company has struggled financially since its inception and relied on a series of loans and asset sales to fund operations for most if not all of its existence. Among other loans, the Company borrowed $1,000,000 from Baytree National Bank & Trust (the "Baytree Loan") in or around 2007. Later, in early 2009, the Company relied on personal loans from several shareholders to stay afloat. Shortly after joining the Company, and prompted by Finnegan (then Chairman) and a plurality of shareholders, Smith arranged for Plaintiff and Percia to be removed from the Company's board, motivated in part by their failure to extend the Company personal loans and, according to Smith, by rumors that Plaintiff had attempted to usurp Company business.[3] (Dkt. No. 15, ¶ 19).

By July 2009 relations between board members soured further and their allegiances shifted. Smith and Marcia pursued removing Finnegan's son, who received a six-figure salary, from the Company's payroll in an effort to cut costs. Those efforts helped cause Finnegan to realign with Plaintiff, and together they "began to hatch a plan . . . to eliminate Smith and Marcia from the company." *Finnegan v. Baker,* 88 Mass. App. Ct. 35, 38–39, 35 N.E.3d 778, 782 (2015). That plan involved calling a board meeting at which Smith would be removed as an officer, pursuant to a vote effectively controlled by Plaintiff's and Finnegan's shares, and effectively replaced by Plaintiff. Smith caught wind of those efforts, however, and converted a personal loan he had made to the company

---

[3] Plaintiff denies the rumors' accuracy.

to equity. Marcia made a similar conversion and together they effectively gained voting control of the Company and thwarted Finnegan and Plaintiff's plan to wrest control for themselves.

Relationships grew worse as Finnegan and Plaintiff took further action. Finnegan was removed from the board and demanded immediate repayment of his personal loans to the Company, with interest. At roughly the same time, Finnegan and Plaintiff formed "Back Bay Ventures," an LLC, and through that entity surreptitiously bought the Company's $1,000,000 Baytree Loan and then promptly demanded payment and declared the Company in default. Almost simultaneous with those efforts, Plaintiff and Finnegan initiated a putative derivative suit in Suffolk County Superior Court against Smith, Marcia, and Baker on the Company's behalf, asserting claims for breach of fiduciary duty, unjust enrichment, and "rescission" of the conversion of Defendants' notes into VBenx stock, effectively challenging the validity of Smith and Marcia's debt conversions that rendered them minority shareholders (the "Superior Court Action").[4] The Superior Court Action defendants, who included both Defendants named here, then filed multiple counterclaims, both on their own behalf and on behalf of the Company, which were stayed pending a bench trial on the underlying claims. The bench trial lasted 25 days and resulted in an April 4, 2013 judgment in favor of the defendants.

After an appellate court affirmed that judgment, the Superior Court then tried the counterclaims before a jury.[5] After dismissal of certain counterclaims at the pleading stage and

---

[4] While styled as a derivative suit, the state appellate court more aptly characterized the action as an internecine "dispute over control of Vbenx Corporation" when affirming judgment for the defendants. *Finnegan v. Baker*, 88 Mass. App. Ct. 35, 36, 35 N.E.3d 778, 780 (2015).

[5] In November of 2011, after the bench trial and while the Suffolk County Action was under advisement but before judgement issued, Plaintiff filed a separate action against Defendants Marcia and Smith in the Delaware Court of Chancery seeking declaratory relief regarding the composition of the Company's board. Marcia and Smith moved for Judge Lauriat to enjoin that action, arguing that it was duplicative of the matter he held under advisement. The day after that motion, Finnegan's wife successfully moved to be substituted as the named plaintiff in the Court of Chancery (by or around this time Finnegan had transferred his shares to his wife). The Chancery Court stayed the Delaware action until Judge Lauriat ultimately enjoined both Plaintiff and Mrs. Finnegan from pursuing it and ordered that Mrs. Finnegan be added as a Plaintiff in the pending Suffolk County Action.

summary judgment stage, a jury tried Defendant Smith and Marcia's counterclaims (i) for malicious prosecution against both Finnegan and Plaintiff, (ii) for breach of fiduciary against Finnegan (premised on his actions involving the Baytree loans), and (iii) for Phillips' aiding and abetting of that breach. The jury found for Smith and Marcia in every respect, and judgment later entered against Plaintiff and Finnegan after denial of their post-trial motions. As for the breach of fiduciary duty claims, judgment entered against Finnegan on the principle claim and Plaintiff on the aiding and abetting claim, each for the sum of $146,730. As for the malicious prosecution claims, both Finnegan and Plaintiff were found jointly and severally liable in the amount of $1,411,398.10. Thus, at the time they filed their instant motions and post-judgment interest had accrued, Defendants jointly held—in their own names and on behalf of the Company—an unsatisfied judgment against Plaintiff for over $1.5 million dollars.

The alleged basis of Plaintiff's present suit derives from yet another lawsuit involving CFN and Liberty Mutual Insurance Company (the "Liberty Mutual Action"). Invoking diversity jurisdiction, CFN brought suit in the District of Massachusetts in November of 2012, asserting that Liberty Mutual had acted tortiously and in breach of contract by refusing to pay certain commissions for sales to groups and employers allegedly associated with youdecide.com. Liberty Mutual counterclaimed, arguing that CFN had wrongfully accepted commissions in breach of contract and the duty of good faith and fair dealing. Roughly two years later, after lengthy discovery, Judge Sorokin ruled on the parties' cross-motions for summary judgment, generally ruling in Liberty Mutual's favor. (*See* Case NO. 12-cv-12091, Dkt. No. 137). The Judge granted Liberty Mutual's motion in part and denied CFN's motion in full, holding that CFN breached both the terms of the parties' contract and the implied duty of good faith and fair dealing by accepting commissions for sales to 32 "groups" of insureds. Liability for claims involving 52 other "groups" were scheduled for trial until the parties settled and the case was dismissed upon the parties' stipulation.

Nearly one year later Plaintiff initiated the instant action, once again purporting to sue on Behalf of VBenx and naming Marcia and Smith as defendants. Plaintiff asserts five distinct "counts," sounding in both tort and contract, but describes the alleged breach fiduciary duty as his "primary cause of action." (Dkt. No. 20 at 19). Plaintiff's legal theory is murky on this point, but he appears to assert that Judge Sorokin's determination that CFN violated contractual duties in the Liberty Mutual Action establishes that Defendants Smith and Marcia breached their fiduciary duties as officers and or directors to the Company. Defendants moved to dismiss for failure to state a claim, on timeliness grounds, and on the basis that Plaintiff is not an appropriate derivative representative under Rule 23.1. Because the latter grounds have obvious merit, and for the sake of efficiency, the court grants dismissal under Rule 23.1 and otherwise dismisses Defendants' motions as moot.

### III.   DISCUSSION

Rule 23.1 of the Federal Rules of Civil Procedure allows shareholders to bring "derivative actions" on behalf of a corporation to enforce corporate rights provided that certain conditions are met. As relevant here, Rule 23.1 provides that "a derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). Whether it appears that a plaintiff can or cannot "adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation" is a fact-specific issue that will vary with each case. *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 (11th Cir. 1982).

Courts consider a variety of factors when determining the adequacy of representation in derivative suits under Rule 23.1, including:

> economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the

6

>plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Davis v. Comed, Inc.*, 619 F.2d 588, 593–94 (6th Cir.1980); *see also Crawford v. Magee*, No. CIV. A. 89-1038-WF, 1993 WL 438463, at *4 (D. Mass. Oct. 12, 1993) (Wolf, J) (quoting *Davis*). "Perhaps the most important element to be considered is whether plaintiff's interests are antagonistic to those plaintiff is seeking to represent." 7C Fed. Prac. & Proc. Civ. § 1833 (3d ed. 2007) ("Wright & Miller"). If there is such a conflict of interest or other "outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit," then the representation may be deemed inadequate and the suit the dismissed. *G. A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 27 (1st Cir. 1975).

The First Circuit has squarely found that the presence of other suits involving the same parties raises a potential for conflict and motive for "leverage" that disqualifies plaintiffs under Rule 23.1 *Id.* at 26; *see also Blum v. Morgan Guaranty Trust Co. of New York*, 539 F.2d 1388, 1390 (5th Cir.1976) ("*G. A. Enterprises* is particularly apropos as involving a situation where the representative could conceivably use the derivative action as 'leverage' in other litigation between himself and the corporation."); *Zarowitz v. BankAmerica Corp.*, 866 F.2d 1164 (9th Cir.1989) (finding plaintiff's interest in pursuing derivative suit against bank "dwarfed" by interest in pursuing his own private suit against the bank, such that individual could not act as a representative plaintiff); *Chesterton v. Chesterton*, No. CIV. A. 89-2854-S, 1990 WL 150066, at *2 (D. Mass. Oct. 2, 1990) (Skinner, J) ("Courts have been most concerned when the derivative action becomes 'perverted into a weapon which, as its highest and best use, would be leverage in his other lawsuits.') (quoting *Davis*, 619 F.2d at 597).

Here, as in *G.A. Enterprises*, the court finds that outside entanglements render Plaintiff an unsuitable derivative plaintiff and his suit must therefore be dismissed. Defendant's last derivative suit, the Superior Court Action, resulted in a verdict against him for malicious prosecution. On that basis, the Defendants hold an unsatisfied judgment—both in their own names and that of VBenx— in an amount exceeding 1.5 million dollars. After further debt conversions and stock issuance, Plaintiff's owns only 2% of the Company. This interest "pale[s] in comparison" to the value of the unsatisfied judgment against him, and that comparison brings his motives for bringing this suit into serious doubt. *Recchion on Behalf of Westinghouse Elec. Corp. v. Kirby*, 637 F. Supp. 1309, 1315 (W.D. Pa. 1986); *see also Blum*, 539 F.2d at 1390 ("The relative value of the subject matters involved is an important consideration in evaluating a derivative suit instituted by a representative entangled in other litigation with defendant") (citing *G.A. Enterprises*).[6] "In such circumstances, where there is substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal, and not as a device for the protection of all shareholders, other courts have properly refused to permit the derivative action to proceed." *Owen v. Diversified Industries, Inc.,* 643 F.2d 441, 443 (6th Cir.1981) (citations omitted). That outcome is unavoidable here, given the history of litigation between the parties and in light of the great potential for improper motive, the apparent weakness of the claims asserted, and the "element of vindictiveness" imparted by Plaintiff's reference to Defendant Smith as an "evil dwarf" and the record as a whole.

Separately, the court DENIES Plaintiff's Motion for Sanctions. Plaintiff moved for sanctions approximately three months after the Defendants filed their dispositive motions, arguing

---

[6] The value of Plaintiff's shares is difficult to measure and certainly debatable. One potential measure could be premised on a term sheet circulated at an April 22, 2009 shareholder meeting that pegged share price at $0.1575. *Finnegan v. Baker*, 2012 WL 6629636, at *9-10. With that valuation, Plaintiff's 2% stake would be worth $33,437.50. Given the litigations initiated after this valuation, the associated costs and fees the Company has advanced, and considering Judge Lauriat's more recent findings that the company has yet to turn a profit and the presumptive loss of Liberty Mutual's business, it is likely that the value is lower still.

that Defendant's opening brief had misrepresented facts in a footnote. The content of that footnote stated, in relevant part, that a "Harvard representative was deposed [and] . . . confirmed that Phillips, while still a director of VBenx, had attempted to dissuade her from hiring VBenx." (Dkt. No. 14 at 5, n. 2). Citing transcripts from that deposition, Plaintiff contends that the deponent did not "confirm" such "rumors" and that any contrary construal is sanctionably baseless. The court disagrees. While the deponent did not expressly "confirm" that Plaintiff made "attempts to dissuade her," a reasonable person could infer that the content of her testimony "confirmed" or at least corroborated that theory. Furthermore, the footnote in question is immaterial to both Defendants' arguments for disqualification and the court's Rule 23.1 analysis. Any exaggeration of the matter is therefore harmless and does not merit sanctions.

## VI. CONCLUSION

For the above reasons, Defendants' Motion to Disqualify Plaintiff under FRCP 23.1 is GRANTED (Dkt. No. 13) and Plaintiff's Motion for Sanctions is DENIED (Dkt. No. 35). The Motion to Dismiss (Dkt. No 11) is therefore found MOOT and the Clerk of Court is respectfully directed to enter an order of dismissal and close the case.

It is So Ordered.

  /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge